**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Daniel D. Domenico**

Civil Action No. 1:26-cv-00851-DDD

BROOK YITBARK KEBEDE,

     Petitioner,

v.

JUAN BALTAZAR, Warden;
DAVID VENTURELLA, Acting Director of Immigration and Customs
    Enforcement;
ROBERT HAGAN, Area Field Office Director of Immigration and
    Customs Enforcement; and
TODD BLANCHE, Acting Attorney General,

     Respondents.[1]

---

## PRELIMINARY INJUNCTION

---

The petitioner moves for a preliminary injunction to prevent the respondents from removing him to Cameroon without giving him a reasonable-fear interview. Doc. 19. For the following reasons, the motion is granted, ant the respondents are preliminarily enjoined from removing the petitioner from the United States while this case is pending.

### BACKGROUND[2]

The petitioner is a thirty-one-year-old native and citizen of Ethiopia. Doc. 1 at 23; Doc. 17-1 at 3; Doc. 19 at 1; Doc. 22-1 at 3. He is Amhara,

---

[1]    To the extent that any of the original respondents has ceased to hold office during the pendency of this action, that party's successor "is automatically substituted as a party," and "any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d).

[2]    In this Order, all pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the

which is the second-largest ethnic group in Ethiopia after the Oromo ethnic group. Doc. 1 at 16, 23; Doc. 16 at 1; Doc. 19-1 at 1. The ruling party in Ethiopia is Oromo. Doc. 1 at 23; Doc. 15 at 1. While living in Ethiopia, the petitioner used his social-media accounts to oppose harm being inflicted on the Amhara people. Doc. 1 at 23; Doc. 16 at 2. In the fall of 2019, the petitioner was captured by two Oromo men and then imprisoned and abused for months. Doc. 1 at 23-24; Doc. 15 at 1-2; Doc. 16 at 2-5. He was released in December 2019 after agreeing to delete his social-media accounts and refrain from posting anything critical of the Ethiopian government. Doc. 1 at 24; Doc. 16 at 5. The petitioner then left Ethiopia and went to the United Kingdom, where he lived until August 2023. Doc. 1 at 24.

On September 25, 2023, the petitioner entered the United States by illegally crossing the U.S.-Mexico border and was apprehended by Customs and Border Protection shortly thereafter. *Id.*; Doc. 17-1 at 3. On September 26, 2023, the Department of Homeland Security issued a Notice to Appear to the petitioner, initiating removal proceedings under 8 U.S.C. § 1229a. Doc. 1 at 20; Doc. 17-1 at 3. DHS charged the petitioner with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) for being an alien present in the United States without being admitted or paroled or who arrived in the United States at an undesignated time or place, and under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for being an applicant for admission who is not in possession of valid documentation. Doc. 1 at 20; Doc. 17-1 at 3, 4. The petitioner conceded the charges of inadmissibility, and an Immigration Judge sustained those charges and designated Ethiopia as the country of removal. Doc. 1 at 20. On February 16, 2024, the respondent filed an application for asylum under 8 U.S.C. § 1158, withholding

---

top of each page, which may differ from a document's internal pagination.

of removal under 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture. *Id.* at 21; Doc. 17-1 at 3.

On January 13, 2026, the IJ denied asylum, ordered the petitioner removed to Ethiopia or in the alternative to the United Kingdom, and granted withholding of removal to Ethiopia under 8 U.S.C. § 1231(b)(3).[3] Doc. 1 at 20-32; Doc. 17-1 at 4; Doc. 19-3 at 1. The order of removal became final on February 12. Doc. 17-1 at 4; Doc. 22-1 at 3. The United Kingdom has advised Immigration and Customs Enforcement that it will not accept the petitioner for removal. Doc. 17-1 at 5. The petitioner is currently detained pursuant to 8 U.S.C. § 1231. *Id.*

On March 2, 2026, the petitioner filed a pro se petition for a writ of habeas corpus, challenging his detention and the respondents' third-country removal procedures. Doc. 1. On March 12, he filed an amended application as directed by Magistrate Judge Gurley. Doc. 5; *see also* Docs. 4, 15, 16. The respondents have filed a response, Doc. 17, and the petitioner has filed a pro se reply, Doc. 24.

ICE has been pursuing the petitioner's removal to a third country pursuant to 8 U.S.C. § 1231(b). Doc. 17-1 at 5; Doc. 22-1 at 3. On April 13, ICE served the petitioner with a Notice of Removal to Uganda. Doc. 17-1 at 5. The petitioner asserted a fear of persecution if removed to Uganda. *Id.*; Doc. 22-1 at 3; *see also* Doc. 15. ICE referred the petitioner to U.S. Citizenship and Immigration Services to determine his eligibility for withholding of removal to Uganda under 8 U.S.C. § 1231(b)(3). Doc. 17-1 at 5; Doc. 22-1 at 3; *see also* Doc. 15 at 1-3 (petitioner discussing fear that he would be handed over to the Ethiopian government upon arrival in Uganda and asserting DHS officers

---

[3]    The IJ did not address the petitioner's application for protection under the Convention Against Torture because he granted withholding of removal under the Immigration and Nationality Act. Doc. 1 at 32.

conducted reasonable-fear interview without allowing him to submit evidence in support of his fear claim). On April 16, USCIS determined that the petitioner had not established that it is more likely than not he will be persecuted or tortured if removed to Uganda. Doc. 17-1 at 5; Doc. 22-1 at 3; Doc. 15 at 3, 4. The government of Uganda will accept the petitioner for removal, but ICE cannot remove him until he signs the Notice of Removal, which he has thus far refused to do. Doc. 17-1 at 5, 6.

In May 2026, DHS "received diplomatic assurances from Cameroon that Petitioner will not be persecuted or tortured if the United States removes him to Cameroon." Doc. 22-1 at 3. On May 21, ICE notified the petitioner that he would be removed to Cameroon. *Id.* at 4; Doc. 19-1 at 1 (petitioner was told his removal would happen on Sunday, May 24). That same day, ICE transferred the petitioner from the Aurora, Colorado detention facility to an ICE facility in Arizona and then to a facility in Los Fresnos, Texas in preparation for his removal to Cameroon. Doc. 22-1 at 4 & n.1. The petitioner fears persecution if he is removed to Cameroon "because he expects to be persecuted, tortured, and possibly killed by Boko Haram and/or ISIS-West Africa, or their agents, based on his religion (Orthodox Christian), his ethnicity (Amharan), and his political beliefs and conduct (advocating for the rights of Orthodox Christians and Amharan Ethiopians)." Doc. 19 at 2; *see also* Doc. 19-1 at 1 (¶¶ 6-7); Doc. 23-1; Doc. 23-2; Doc. 23-4. ICE has not referred the petitioner to USCIS to determine his eligibility for withholding of removal to Cameroon "because DHS received credible diplomatic assurances from Cameron." Doc. 22-1 at 3-4.

On Friday, May 22 at 5:24 p.m., counsel entered an appearance for the petitioner. Doc. 18. On Saturday, May 23 at 6:08 p.m., the petitioner's new counsel filed the instant motion seeking to first temporarily restrain and then preliminarily enjoin the petitioner's removal to

Cameroon without providing him a reasonable-fear interview to determine his eligibility for withholding of removal under 8 U.S.C. § 1231(b)(3) or protection under the Convention Against Torture. Doc. 19; *see also* Doc. 23. Because it appeared the petitioner would imminently be removed to Cameroon during a holiday weekend,[4] before the respondents could be heard in opposition, I granted the petitioner's request for a temporary restraining order to preserve this Court's jurisdiction and prevent potential irreparable harm to him, and I took his request for a preliminary injunction under advisement. Doc. 20. ICE intends to remove the petitioner to Cameroon in the near future if permitted to do so. Doc. 22 at 4; Doc. 22-1 at 5.

The respondents have now filed a response to the motion for a preliminary injunction, Doc. 22, and the petitioner has filed a reply, Doc. 23. The petitioner requests a hearing on the motion, Doc. 23 at 5, but I have determined that a hearing is not necessary.[5]

## LEGAL STANDARD

"The purpose of a preliminary injunction is . . . to preserve the relative positions of the parties until a trial on the merits can be held, and to balance the equities as the litigation moves forward." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (citations and internal quotation marks omitted). To succeed on a motion for a preliminary injunction, the

---

[4]   Monday, May 25 was Memorial Day.

[5]   *See Northglenn Gunther Toody's, LLC v. HQ8-10410-10450 Melody Lane*, 702 F. App'x 702, 705 (10th Cir. 2017) (neither Rule 65 nor Tenth Circuit precedent require district court to hold evidentiary hearing or oral argument before deciding motion for preliminary injunction); *Carbajal v. Warner*, 561 F. App'x 759, 764 (10th Cir. 2014) (whether to hold preliminary-injunction hearing is within district court's discretion (citing *Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191, 1998 WL 339465, at *3 (10th Cir. 1998) (unpublished table decision))); Local Civ. R. 7.1(h) (motion may be decided without oral argument at court's discretion).

movant must show that: (1) he is "likely to succeed on the merits"; (2) he is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [his] favor"; and (4) "an injunction is in the public interest." *Garcia ex rel. M.G. v. Armijo*, 117 F.4th 1230, 1239 (10th Cir. 2024) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The third and fourth preliminary-injunction factors "merge" where, as here, the government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## DISCUSSION

### I.  Likelihood of Success on the Merits

Section 1231(b)(2) provides

> four consecutive removal commands: (1) An alien shall be removed to the country of his choice (subparagraphs (A) to (C)), unless one of the conditions eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless one of the conditions eliminating that command is satisfied; (3) otherwise he shall be removed to one of the countries with which he has a lesser connection (clauses (i) to (vi) of subparagraph (E)); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to "another country whose government will accept the alien into that country" (clause (vii) of subparagraph (E)).

*Jama v. ICE*, 543 U.S. 335, 338-41 (2005). The last option is often referred to as "third-country removal." At issue here is what process a noncitizen subject to a final order of removal is due when the government seeks remove him to a third country that was not designated during his removal proceedings.

The INA prohibits removal of noncitizens to a country "if the Attorney General Decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.

§ 1231(b)(3)(A). And the Convention Against Torture similarly prohibits expelling a person to another country "where there are substantial grounds for believing that he would be in danger of being subjected to torture."[6] Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment art. 3, Dec. 10, 1984, T.I.A.S. No. 94-1120.1, 1465 U.N.T.S. 113. The INA and its implementing regulations provide procedures for noncitizens to assert fear-based claims for withholding of removal and CAT protection in expedited removal proceedings under Section 1225(b) and 1228, standard removal proceedings under Section 1229a, and when a removal order is reinstated following reentry to the United States after a previous departure. *See* 8 U.S.C. § 1225(b)(1); 8 C.F.R. §§ 208.5, 208.16, 208.17, 208.18, 208.30, 208.31, 1208.5, 1208.16, 1208.17, 1208.18, 1208.30, 1208.31, 1240.17. No express procedures are provided, however, for the situation at issue here, where removal proceedings have concluded and the government seeks to effectuate a third-country removal to a country that was not designated in those proceedings. *See Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1011-12 (S.D. Tex. 2025).

ICE and DHS have issued policy memoranda to fill that gap. *See* Doc. 1 at 33; Doc. 22-2. Those policies provide that "[i]f the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be

---

[6]    The United States is a signatory to the Convention Against Torture, which has been codified in a statutory note to Section 1231. See 8 U.S.C. § 1231 note (United States Policy with Respect to the Involuntary Return of Persons in Danger of Subjection to Torture); *see also* Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 2242, 112 Stat. 2681 (1998) (Foreign Affairs Reform and Restructuring Act of 1998); *Riley v. Bondi*, 606 U.S. 259, 265 (2025) (discussing United States' signing and implementation of CAT).

credible, the alien may be removed without the need for further proce-
dures." Doc. 1 at 33; *accord* Doc. 22-2 at 3-4. In other words, under the
respondents' policies, they need not give a noncitizen any notice or op-
portunity to assert a fear-based claim for withholding of removal or CAT
protection prior to removal to a country from which they have received
diplomatic assurances deemed to be credible.

The petitioner contends the respondents' policies violate his right to
due process. *See* Doc. 5 at 3; Doc. 19 at 3-4; Doc. 23 at 1-2. The respond-
ents argue that the petitioner is not likely to succeed on this claim be-
cause: (1) the petitioner has received all the process he is due in the form
of credible diplomatic assurances from Cameroon; (2) the petitioner's
challenge to third-country removal procedures is not cognizable in a ha-
beas proceeding because it is not a challenge to his detention; and (3) the
petitioner is a non-opt-out class member in a class-action case challeng-
ing the same third-country removal procedures, so he cannot separately
challenge those procedures here. Doc. 22 at 5-11. At this preliminary
stage of the proceedings, and given the stakes, I cannot agree.

"[T]he Fifth Amendment entitles aliens to due process of law in the
context of removal proceedings." *A. A. R. P. v. Trump*, 605 U.S. 91, 94
(2025) (quoting *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025)). This re-
quires that 'detainees must receive notice . . . that they are subject to
removal . . . within a reasonable time and in such a manner as will allow
them to actually seek . . . relief' before removal," which means that "a
detainee must have sufficient time and information to reasonably be
able to contact counsel, file a petition, and pursue appropriate relief." *Id.*
at 95 (quoting *J. G. G.*, 604 U.S. at 673) (preliminarily enjoining sum-
mary removal under Alien Enemies Act). Numerous other courts have
found that the respondents' policies—under which they are not obligated
to provide noncitizens in the petitioner's position any notice whatsoever

prior to removal—violate these basic tenets of due process.[7] Those courts have rejected the same arguments that the respondents assert in this case.

While the respondents may ultimately be correct that the petitioner's due-process claim concerning third-country removal procedures does not sound in habeas, I have discretion to entertain both habeas and non-habeas claims in the same action. *See Giraldo Nieto v. Ceja*, No. 1:24-cv-

---

[7] *See, e.g.*, *Pacheco v. Baltazar*, No. 26-cv-01176-PAB, 2026 WL 1223414, at *3 to *4 (D. Colo. May 5, 2026) (policy "deprives petitioner of the opportunity to argue that [diplomatic] assurances are, in fact, not credible," is "contrary to the mandate that noncitizens are 'entitled to notice and an opportunity to challenge their removal,'" and violates constitutional right to due process (quoting *J. G. G.*, 604 U.S. at 673)); *Roberts v. Anda-Ybarra*, — F. Supp. 3d —, No. EP-26-CV-00377-DCG, 2026 WL 1459725, at *7 to *9 (W.D. Tex. May 22, 2026); *D.V.D. v. DHS*, 821 F. Supp. 3d 102, 143-65 (D. Mass. 2026), *judgment stayed pending appeal*, No. 26-1212, slip op. (1st Cir. Mar. 16, 2026); *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1068-70 (W.D. Wash. 2025); *Cruz-Medina v. Noem*, 806 F. Supp. 3d 536, 545-52 (D. Md. 2025); *Sagastizado*, 802 F. Supp. 3d at 1008-13; *Dia v. Raycraft*, No. 1:26-cv-1054, 2026 WL 1476507, at *2 to *9 (W.D. Mich. May 27, 2026); *Erkan v. Warden*, No. H-26-2599, 2026 WL 1459724, at *2 (S.D. Tex. May 22, 2026); *Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *10 to *12 (D. Md. Jan. 9, 2026); *Martinez v. Bondi*, No. 1:25-cv-01633-EFB (HC), 2025 WL 3650477, at *5 to *6 (E.D. Cal. Dec. 16, 2025); *cf. Khouzam v. Att'y Gen.*, 549 F.3d 235, 259 (3d Cir. 2008) (government violated due process by terminating petitioner's deferral of removal without affording him opportunity to test reliability of Egypt's diplomatic assurances; remanding to BIA "to ensure that [he] is afforded due process before he may be removed on the basis of diplomatic assurances," which must include "an individualized determination" after "an opportunity to present, before a neutral and impartial decisionmaker, evidence and arguments"); *see also Ibarra-Perez v. United States*, 154 F.4th 989 (9th Cir. 2025); *Mendis v. Filip*, 554 F.3d 335, 339 n.5 (2d Cir. 2009); *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999); *Tonfack v. Att'y Gen.*, 580 F. App'x 79, 81 n.2 (3d Cir. 2014) (citing *She v. Holder*, 629 F.3d 958, 965 (9th Cir. 2010), *superseded on other grounds by* 8 U.S.C. § 1158(b)(1)(B)(iii))); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998).

02821-DDD-NRN, 2025 WL 4087626, at *3 n.6 (D. Colo. June 12, 2025) (citing *Whitemore v. Parker*, 484 F. App'x 227, 240 (10th Cir. 2012) (collecting cases)). I must also liberally construe the petitioner's pro se pleading. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim . . . it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories . . . or his unfamiliarity with pleading requirements.");[8] *see also* Doc. 5 at 3, 5-6 (arguing "[t]he process of a [t]hird-country [r]emoval violates my Due Process" rights, and requesting that respondents be enjoined from pursuing his removal to a third country "unless they provide written notice [and] a meaningful opportunity to raise a fear-based claim for Convention Against Torture . . . protection"); Doc. 1 at 6, 7, 17-18; Doc. 4 at 6, 7; Doc. 24 at 8. Preliminary relief need not be denied because the petitioner may have included a non-habeas claim on the form application for a writ of habeas corpus. *See Pacheco*, 2026 WL 1223414, at *3 ("[T]he Court will consider petitioner's claim that he cannot be removed to a third country without being provided notice and an opportunity to be heard" because "petitioner labeled his filing as both a 'Verified Petition for Writ of Habeas Corpus' and as a 'Complaint for Injunctive and Declaratory Relief.'").

Nor does the petitioner's membership in the *D.V.D.* class preclude individual preliminary injunctive relief in these circumstances. In *D.V.D.*, the court has dissolved the original preliminary injunction at the plaintiffs' request, and the plaintiffs are no longer seeking that form

---

[8] *Accord Doe v. Univ. of Denver*, 952 F.3d 1182, 1187 n.2 (10th Cir. 2020) (pro se plaintiff "cannot be expected to identify the specific legal source of his claim with the precision of a trained lawyer"); *Sheridan v. United States*, 214 F. App'x 857, 859 (10th Cir. 2007) (district court should have "construed [the plaintiff's] pro se complaint as he appears to have intended it," and as invoking "[t]he most appropriate vehicle for [his] claims").

of class-wide relief. *See D.V.D.*, 821 F. Supp. 3d at 126. And the First Circuit has stayed the district court's declaratory judgment pending appeal. *D.V.D. v. DHS*, No. 26-1212, slip op. (1st Cir. Mar. 16, 2026). Class members may bring individual actions for equitable relief when the individual relief sought cannot be obtained in the class action. *See McNeil v. Guthrie*, 945 F.2d 1163, 1165-66 n.4 (10th Cir. 1991); *Maestas v. Salt Lake County*, 2 F.3d 1160, 1993 WL 307641, at *1 (10th Cir. 1993) (unpublished table decision); *accord Pacheco*, 2026 WL 1223414, at *3 n.4. And absent preliminary relief, the petitioner here may be removed before the class claims in *D.V.D.* are resolved.

In sum, the petitioner has demonstrated a sufficient likelihood of success on his claim that he is entitled to some form of notice of the respondents' intention to remove him to a third country and some opportunity to be heard on his fear-based claim for withholding of removal or CAT protection prior to removal. This finding, though, should not be "treat[ed] . . . as 'tantamount to [a] decision[] on the underlying merits,'" and I may "reach[] a different conclusion upon full consideration" of the issues. *Lackey*, 604 U.S. at 201. Because the petitioner is now represented by counsel, the Court and the parties would benefit from an amended pleading clarifying the petitioner's claims, including the issue of whether his due-process claim concerning third-country removal procedures is a habeas claim or some other type of claim. I will therefore direct his counsel to file an amended pleading, and I will adjudicate all the petitioner's claims after briefing on that amended pleading.

## II.  Irreparable Harm

The "burden of removal alone cannot constitute the requisite irreparable injury." *Nken*, 556 U.S. at 435. But there is a "sufficient probability of irreparable injury" if a petitioner's life will be in jeopardy upon removal, as the petitioner asserts his will be here. *Singh v. Garland*,

4 F.4th 322, 329 (5th Cir. 2021) (granting stay of removal pending appeal of denial of application for asylum and CAT protection), *opinion withdrawn on procedural grounds by* 855 F. App'x 958 (5th Cir. 2021) ("The stay remains in effect . . . ."). And a violation of an individual's constitutional rights is, by itself, generally considered irreparable harm. *Aphosian v. Barr*, 958 F.3d, 990 (10th Cir. 2020), *abrogated on other grounds by Garland v. Cargill,* 602 U.S. 406 (2024). I find that the petitioner has satisfied this preliminary-injunction factor.

## III. Balance of Equities and the Public Interest

To show that the balance of equities tips in his favor, the petitioner must show that his threatened injury without an injunction "outweighs the harm that the preliminary injunction may cause the opposing party." *Colorado v. Griswold*, 99 F.4th 1234, 1240 (10th Cir. 2024). On one side, "[t]here is always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. But "[t]here is generally no public interest in the perpetuation of unlawful agency action." *State v. Biden*, 10 F.4th 538, 560 (2021). On the other side, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken*, 556 U.S. at 436. The harm petitioner alleges could occur here is severe. And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Ortega v. Grisham*, 148 F.4th 1134, 1154 n.13 (10th Cir. 2025). Removing the petitioner from the United States could also deprive this Court of jurisdiction. *See A. A. R. P.*, 605 U.S. at 94-98 (court may issue temporary injunctive relief to preserve jurisdiction over habeas proceedings (citing 28 U.S.C. § 1651(a))). The balance of harms tips in the petitioner's favor.

## IV. Security

Pursuant to Rule 65(c), a court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." A court has wide discretion in determining whether to require security. *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003); *Brumfiel v. U.S. Bank*, No. 12-cv-02716-WJM, 2013 WL 1874186, at *7 (D. Colo. May 6, 2013). I find it appropriate to waive the security requirement in this case.

### CONCLUSION

It is **ORDERED** that:

The petitioner's Motion for Preliminary Injunction, **Doc. 19**, is **GRANTED**;

The respondents and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are **PRELIMINARILY ENJOINED** from removing the petitioner from the United States during the pendency of this action;

Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is **DIRECTED** to substitute David Venturella, Acting Director of Immigration and Customs Enforcement, in place of Respondent Todd Lyons; and

The petitioner's counsel must file a second-amended pleading.[9] The respondents must **SHOW CAUSE** within two weeks of service why the

---

[9]    If the amended pleading contains both habeas and non-habeas claims, the petitioner must also pay the filing fee for a civil complaint or file an appropriate motion for leave to proceed without prepayment of fees pursuant to 28 U.S.C. § 1915. *See Giraldo Nieto*, 2025 WL 4087626, at *3 n.6, *12.

relief requested in the second-amended pleading should not be granted, and the petitioner may file a reply within two weeks of service of the response(s).

DATED: June 8, 2026          BY THE COURT:

_____
Daniel D. Domenico
Chief United States District Judge