**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Daniel D. Domenico**

Civil Action No. 1:26-cv-00851-DDD

BROOK YITBARK KEBEDE,

     Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden, Aurora Contract
    Detention Facility;
DAVID VENTURELLA, in his official capacity as Acting Director, U.S.
    Immigration and Customs Enforcement;
GEORGE VALDEZ, in his official capacity as Acting Field Office
    Director, U.S. Immigration and Customs Enforcement;
MARKWAYNE MULLIN, in his official capacity as Secretary, U.S.
    Department of Homeland Security; and
TODD BLANCHE, in his official capacity as Acting Attorney General
    of the United States,

     Respondents.[1]

---

**ORDER GRANTING WRIT OF HABEAS CORPUS**

---

Petitioner Brook Yitbark Kebede seeks a writ of habeas corpus directing his release from immigration detention. Doc. 26. For the following reasons, his petition is granted.

**BACKGROUND[2]**

The petitioner is a thirty-one-year-old native and citizen of Ethiopia. Doc. 1 at 23; Doc. 17-1 at 3; Doc. 19 at 1; Doc. 22-1 at 3; Doc. 26 at 4. He

---

[1]   To the extent that any of the original respondents has ceased to hold office during the pendency of this action, that party's successor "is automatically substituted as a party," and "any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d).

[2]   In this Order, all pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the

- 1 -

is Amhara, which is the second-largest ethnic group in Ethiopia after the Oromo ethnic group. Doc. 1 at 16, 23; Doc. 16 at 1; Doc. 19-1 at 1; Doc. 26 at 4. The ruling party in Ethiopia is Oromo. Doc. 1 at 23; Doc. 15 at 1; Doc. 26 at 4. While living in Ethiopia, the petitioner used his social-media accounts to oppose harm being inflicted on the Amhara people. Doc. 1 at 23; Doc. 16 at 2; Doc. 26 at 4. In the fall of 2019, the petitioner was captured by two Oromo men and then imprisoned and abused. Doc. 1 at 23-24; Doc. 15 at 1-2; Doc. 16 at 2-5; Doc. 26 at 4. He was released in December 2019 after agreeing to delete his social-media accounts and refrain from posting anything critical of the Ethiopian government. Doc. 1 at 24; Doc. 16 at 5; Doc. 26 at 4. The petitioner then left Ethiopia and went to the United Kingdom, where he lived until the fall of 2023. Doc. 1 at 24; Doc. 26 at 4.

On September 25, 2023, the petitioner entered the United States by illegally crossing the U.S.-Mexico border and was apprehended by Customs and Border Protection shortly thereafter. Doc. 1 at 24; Doc. 17-1 at 3; Doc. 26 at 4. On September 26, 2023, the Department of Homeland Security issued a Notice to Appear to the petitioner, initiating removal proceedings under 8 U.S.C. § 1229a. Doc. 1 at 20; Doc. 17-1 at 3. DHS charged the petitioner with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) for being an alien present in the United States without being admitted or paroled or who arrived in the United States at an undesignated time or place, and under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for being an applicant for admission who is not in possession of valid documentation. Doc. 1 at 20; Doc. 17-1 at 3, 4. The petitioner was detained in the custody of U.S. Immigration and Customs Enforcement until No-

---

top of each page, which may differ from a document's internal pagination.

vember 8, 2023, when he was released and enrolled in ICE's Alternatives to Detention program. Doc. 17-1 at 3.

In immigration court, the petitioner conceded the charges of inadmissibility, and an Immigration Judge sustained those charges and designated Ethiopia as the country of removal. Doc. 1 at 20. In February 2024, the petitioner filed an application for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture. *Id.* at 21; Doc. 17-1 at 3; Doc. 26 at 5. On June 29, 2025, ICE re-detained the petitioner, and he has remained in detention since that time. Doc. 17-1 at 4; Doc. 26 at 5. On November 5, 2025, the IJ held a merits hearing on the petitioner's application for asylum, withholding of removal, and CAT protection. Doc. 1 at 20; Doc. 17-1 at 4. On January 13, 2026, the IJ denied asylum, ordered the petitioner removed to Ethiopia or in the alternative to the United Kingdom, and granted withholding of removal to Ethiopia under Section 1231(b)(3).[3] Doc. 1 at 20-32; Doc. 17-1 at 4; Doc. 19-3 at 1; Doc. 26 at 5. The order of removal became administratively final on February 12, 2026. Doc. 17-1 at 4; Doc. 22-1 at 3; *see also* 8 C.F.R. §§ 1241.1(c), 1003.38(b)(2). The United Kingdom has advised ICE that it will not accept the petitioner for removal. Doc. 17-1 at 5; Doc. 26 at 5. ICE has been pursuing the petitioner's removal to a third country pursuant to 8 U.S.C. § 1231(b). Doc. 17-1 at 5; Doc. 22-1 at 3.

On March 2, 2026, the petitioner filed a pro se application for a writ of habeas corpus, challenging his detention and the respondents' third-country removal procedures. Doc. 1. On March 12, he filed an amended

---

[3]    The IJ did not address the petitioner's application for CAT protection because he granted withholding of removal under the Immigration and Nationality Act. Doc. 1 at 32.

application as directed by Magistrate Judge Gurley. Doc. 5; *see also* Docs. 4, 15, 16.

On April 13, 2026, ICE served the petitioner with a Notice of Removal to Uganda. Doc. 17-1 at 5; Doc. 26 at 5-6. The petitioner asserted a fear of persecution if removed to Uganda. Doc. 17-1 at 5; Doc. 22-1 at 3; Doc. 26 at 6; *see also* Doc. 15. ICE referred the petitioner to U.S. Citizenship and Immigration Services to determine his eligibility for withholding of removal to Uganda under 8 U.S.C. § 1231(b)(3). Doc. 17-1 at 5; Doc. 22-1 at 3; *see also* Doc. 15 at 1-3 (petitioner discussing fear that he would be handed over to the Ethiopian government upon arrival in Uganda and asserting DHS officers conducted reasonable-fear interview without allowing him to submit evidence in support of his fear claim). On April 16, USCIS determined that the petitioner had not established that it is more likely than not he will be persecuted or tortured if removed to Uganda. Doc. 17-1 at 5; Doc. 22-1 at 3; Doc. 15 at 3, 4. The government of Uganda will accept the petitioner for removal, but ICE cannot remove him until he signs the Notice of Removal, which he has thus far refused to do. Doc. 17-1 at 5, 6. DHS has not received diplomatic assurances from Uganda that the petitioner will not be persecuted or tortured if he is removed there. Doc. 22-1 at 3-4; Doc. 26 at 6.

In May 2026, DHS "received diplomatic assurances from Cameroon that Petitioner will not be persecuted or tortured if the United States removes him to Cameroon." Doc. 22-1 at 3. On May 21, ICE notified the petitioner that he would be removed to Cameroon. *Id.* at 4; Doc. 19-1 at 1. That same day, ICE transferred the petitioner from the Aurora, Colorado detention facility to an ICE facility in Arizona and then to a facility in Los Fresnos, Texas in preparation for his removal to Cameroon. Doc. 22-1 at 4 & n.1. The petitioner fears persecution if he is removed to Cameroon "because he expects to be persecuted, tortured, and

possibly killed by Boko Haram and/or ISIS-West Africa, or their agents, based on his religion (Orthodox Christian), his ethnicity (Amharan), and his political beliefs and conduct (advocating for the rights of Orthodox Christians and Amharan Ethiopians)." Doc. 19 at 2; *see also* Doc. 19-1 at 1 (¶¶ 6-7); Doc. 23-1; Doc. 23-2; Doc. 23-4; Doc. 26 at 6. ICE has not referred the petitioner to USCIS to determine his eligibility for withholding of removal to Cameroon "because DHS received credible diplomatic assurances from Cameron." Doc. 22-1 at 3-4. The petitioner asserts that it "is not factually true . . . that these diplomatic assurances are specific to Mr. Kebede's assertion of fear of persecution as an Orthodox Christian," and contends that the respondents' alleged receipt of such assurances does not satisfy "the U.S. government's obligations to him under the CAT." Doc. 26 at 6.

On May 22, 2026, counsel entered an appearance for the petitioner, Doc. 18, and on May 23, the petitioner's counsel filed a motion to temporarily restrain and preliminarily enjoin the petitioner's removal to Cameroon without providing him a reasonable-fear interview to determine his eligibility for withholding of removal under 8 U.S.C. § 1231(b)(3) or CAT protection, Doc. 19; *see also* Doc. 23. I granted that motion to preserve this Court's jurisdiction and prevent irreparable harm to the petitioner, Docs. 20, 25, finding that the petitioner had demonstrated a likelihood of success on the merits of his claim that due process requires he be given adequate notice of the respondents' intention to remove him to a third country and some opportunity to be heard on claims for withholding of removal or CAT protection prior to such removal, Doc. 25 at 6-11. The respondents have stated that ICE intends to remove the petitioner to Cameroon in the near future if permitted to do so. Doc. 22 at 4; Doc. 22-1 at 5. But they have also stated that the government of Cameroon has reduced the number of removals it is willing to accept. Doc. 22-1 at 4.

I directed the petitioner's counsel to file an amended pleading clarifying his claims, Doc. 25 at 11, 13, and the petitioner has now filed a second-amended habeas petition, Doc. 26. In that petition, he contends that his detention has or soon will become unreasonably prolonged in violation of his due-process rights and the INA. *Id.* at 11-12. He requests that I order his release from detention, but he no longer appears to request a permanent injunction requiring that the respondents provide him with notice and an opportunity to be heard prior to removal to a third country. *Compare* Doc. 5 at 3, 5-6 (requesting that respondents be enjoined from re-detaining him for removal to a third country "unless they provide written notice [and] a meaningful opportunity to raise a fear-based claim for Convention Against Torture . . . protection"), *with* Doc. 26 at 13. The respondents have filed a response to the second-amended petition stating that they "are not submitting a brief in opposition," and they "recognize that the Court may then decide to grant the Second Amended Petition and award appropriate relief." Doc. 28 at 1.

## LEGAL STANDARD

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief may be granted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to hear statutory and constitutional challenges to immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th Cir. 2001).

- 6 -

## DISCUSSION

While removal proceedings are being adjudicated, a noncitizen may be detained under 8 U.S.C. § 1225 or 1226. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527-28, 533 (2021); *Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018). If a noncitizen is ordered removed, he becomes subject to mandatory detention under 8 U.S.C. § 1231 during the ninety-day "removal period," which begins when the order of removal becomes "administratively final."[4] *See* 8 U.S.C. § 1231(a)(1)(B)(i); *Guzman Chavez*, 594 U.S. at 528, 533-34. The petitioner asserts that his order of removal became administratively final on January 13, 2026, the day it issued, Doc. 26 at 1, 11, while the respondents assert that the order did not become administratively final until February 12, 2026, when the time for the petitioner to appeal the IJ's order expired, Doc. 17 at 3, 4-5, 6; Doc. 22 at 2, 10. The respondents are correct. *See* 8 C.F.R. §§ 1241.1(c) (order of removal becomes final upon expiration of time allotted for appeal if noncitizen does not file appeal within that time), 1003.38(b)(2) (in cases where IJ adjudicated asylum application and did not deny it on certain grounds, notice of appeal must be filed within thirty days of IJ's decision). But either way, the ninety-day removal period has now expired.[5]

If a noncitizen is not removed from the United States during the removal period, the government may in some circumstances continue to

---

[4]   The other two triggers for the beginning of the removal period—a court order lifting a stay and release from non-immigration detention or confinement—do not appear to be at issue here. *See* 8 U.S.C. § 1231(a)(1)(B)(ii)-(iii).

[5]   The respondents previously argued that the ninety-day period should be extended pursuant to 8 U.S.C. § 1231(a)(1)(C) because the petitioner's refusal to sign the Notice of Removal to Uganda was an "act[] to prevent [his] removal subject to an order of removal," Doc. 17 at 7-8, but they no longer assert that argument, *see* Doc. 28.

detain him under Section 1231 while it attempts to effectuate removal, but that detention may not be indefinite. *See* 8 U.S.C. § 1231; 8 C.F.R. § 241.4; *Guzman Chavez*, 594 U.S. at 528-29; *Zadvydas*, 533 U.S. at 688-701. Detention is presumptively reasonable for six months after the beginning of the removal period. *Zadvydas*, 533 U.S. at 701; *accord Clark v. Martinez*, 543 U.S. 371, 386 (2005); *Morales-Fernandez v. INS*, 418 F.3d 1116, 1124 (10th Cir. 2005). That period has not yet elapsed in the petitioner's case. But Section 1231 does not mandate detention beyond the removal period. *See* 8 U.S.C. § 1231(a)(6) (noncitizen "may" be detained beyond removal period). Given that the respondents do not oppose the second-amended petition, Doc. 28, I will order the petitioner's immediate release, subject to appropriate terms of supervision, *see* 8 U.S.C. § 1231(a)(3), (6); *Zadvydas*, 533 U.S. at 699-700 ("[T]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances.").

The record is unclear as to whether the respondents are still pursuing the petitioner's removal to Uganda or Cameroon and whether the petitioner still wishes to pursue fear-based relief from removal to those countries or has taken any steps to do so, whether by moving to reopen his immigration proceedings or otherwise. I will therefore direct the parties to file a status report regarding those issues.

## CONCLUSION

It is **ORDERED** that:

The Court's order to show cause why the first-amended habeas application should not be granted, Doc. 6, is **DISCHARGED AS MOOT**;

The Court's order to show cause why the second-amended habeas application should not be granted, Doc. 25 at 13-14, is **MADE ABSOLUTE**, and the Second Amended Petition for a Writ of Habeas Corpus, **Doc. 26**, is **GRANTED**;

The respondents must immediately release Petitioner Brook Yitbark Kebede from detention subject to appropriate terms of supervision, and must file a status report within **one week** of this Order confirming he has been released;

The parties must also file a joint status report within **one week** of this Order addressing: (1) whether the respondents are still pursuing the petitioner's removal to Uganda or Cameroon and if so, what steps, if any, the petitioner has taken to pursue withholding of removal or CAT protection with respect to those countries; and (2) whether the petitioner still seeks any form of permanent injunctive relief regarding third-country removal procedures and if so, whether the respondents oppose such relief.

DATED: July 9, 2026                    BY THE COURT:

Daniel D. Domenico
Chief United States District Judge

- 9 -